UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20345-CIV-ALTONAGA/Damian

**EBONY NESBITT**,

    Plaintiff,
v.

**MIAMI-DADE COUNTY, FLORIDA**,

    Defendant.
_____/

# ORDER

**THIS CAUSE** came before the Court upon Defendant, Miami-Dade County, Florida's Corrected Motion for Summary Judgment [ECF No. 19], filed on October 18, 2023. Plaintiff, Ebony Nesbitt, filed a Response [ECF No. 23]; to which Defendant filed a Reply [ECF No. 26]. The Court has carefully considered the record, the parties' written submissions,[1] and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND

This case arises from alleged discrimination against Plaintiff by Defendant, her government employer. (*See* Compl. [ECF No. 1] ¶¶ 3–4). Plaintiff, a Black woman (*see id.* ¶ 3), is a law enforcement officer with the Miami-Dade Police Department (*see id.*; SOF ¶ 2). On April 9, 2018, Plaintiff was placed on relieved of duty status with pay after the instigation of a federal criminal investigation into her actions. (*See* SOF ¶ 20; Resp. SOF ¶ 20). Defendant also opened an administrative investigation ("IA"). (*See* SOF ¶ 21; Resp. SOF ¶ 21).

---

[1] The parties' factual submissions include Defendant's Statement of Undisputed Material Facts [ECF No. 17] ("SOF"); Plaintiff's Statement[] of Material Facts in Opposition to Defendant's Motion for Summary Judgment [ECF No. 22] ("Resp. SOF"); and Defendant's Reply to Plaintiff's Statement of Material Facts [ECF No. 27] ("Reply SOF").

Under Florida law, Defendant had six months to investigate and act. *See* Fla. Stat. § 112.532(6)(a). This deadline was statutorily tolled, however, pending resolution of any criminal cases against Plaintiff. *See id.* § 112.532(6)(a)(2).

On August 31, 2018, Plaintiff was charged with a federal crime and, under Section 2-42(22) of the Miami-Dade County Code of Ordinances, automatically suspended without pay. (*See* SOF ¶ 22; Resp. SOF ¶ 22). Plaintiff was acquitted of the federal charges on April 9, 2019 (*see* SOF ¶ 24; Resp. SOF ¶ 24) and reinstated from automatic suspension to relieved of duty status with pay, pending the conclusion of the IA (*see* SOF ¶ 26; Resp. SOF ¶ 26). The IA concluded on January 13, 2020 with a report and reprimand. (*See* SOF ¶¶ 42–43; Resp. SOF ¶¶ 42–43).[2]

Between her acquittal and the conclusion of the IA, a second IA was opened concerning Plaintiff, based on issues raised by an investigator in the first IA. (*See* SOF ¶¶ 28–31; Resp. ¶¶ 28–31 (disputing propriety of second IA but not its existence)). The deadline to conclude this IA was also statutorily tolled while the State Attorney's Office decided whether to pursue criminal charges; on December 6, 2021, it ultimately declined to press charges. (*See* SOF ¶¶ 32– 33; Resp. SOF ¶¶ 32–33 (disputing propriety of second IA but not actions of State Attorney's Office)). Plaintiff then declined to provide a statement for the second IA and sought a continuance of the investigation while she conferred with her counsel. (*See* SOF ¶¶ 36–37; Resp. SOF ¶¶ 36–37). Eventually, Defendant "administratively close[d] the case." (SOF ¶ 38 (alteration added); *see also* Resp. SOF ¶ 38 (disputing propriety of decision but not its outcome)).

On July 25, 2022, after the second IA was closed, Plaintiff was promoted to Sergeant. (*See* SOF ¶ 61; Resp. ¶ 61 (clarifying effective date of promotion)). Under a subsequent settlement

---

[2] Plaintiff did not sign for the report until March 2, 2020. (*See* SOF, Ex. 1, Pl.'s Dep. [ECF No. 17-1] 22:08–22:23).

agreement, the promotion was made retroactive, entitling her to backpay. (*See* SOF ¶¶ 61–62; Resp. ¶¶ 61–62 (disputing whether backpay was received but not that Plaintiff is entitled to it under the settlement agreement)).

Except for the suspension during her criminal trial, Plaintiff remained on relieved of duty with pay through both IAs. (*See* SOF ¶ 46; Resp. SOF ¶ 46 (disputing specifics of duty but not status)). Consequently, she maintained her base salary and benefits but was limited in her ability to work overtime, use a take-home car, and be promoted. (*See* SOF ¶¶ 48–60; Resp. SOF ¶¶ 48–60 (disputing propriety of decision but not status)). During this time, Plaintiff made three requests to work overtime, each of which was denied. (*See* SOF ¶ 68). According to Defendant, these requests were denied because of the limitations associated with her relieved of duty status. (*See id.* ¶ 76). According to Plaintiff, she specifically requested to work in exchange for compensatory leave — something several male, non-Black officers on relieved of duty status were permitted to do. (*See* Resp. SOF ¶¶ 68, 72, 76; SOF, Ex. A, Pl.'s Dep. [ECF No. 17-1] 33:17–38:13).[3]

Further, around December 2021, Plaintiff requested permission to work from home because her son has asthma and she feared COVID-19 exposure. (*See* SOF ¶¶ 78–79; Resp. SOF ¶¶ 78–79). This request was also denied. (*See* Pl.'s Dep. 39:25–40:23).

On January 27, 2023, Plaintiff filed a Complaint alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (*See generally* Compl.). Now, Defendant moves for summary judgment on all claims. (*See generally* Mot.).

---

[3] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

## II.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment may be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *See id.* 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim and (2) showing the Court there is insufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-Civ-14209, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (alteration added; quotation marks omitted; quoting Fed. R. Civ. P. 56(c)(1)).

## III.  DISCUSSION

Plaintiff states five claims for relief: Counts I to III allege discrimination (sex, race, and color, respectively) under Title VII (*see* Compl. ¶¶ 8–42); Count IV alleges retaliation, also under

4

Title VII (*see id.* ¶¶ 43–47); and Count V alleges discrimination under the ADA (*see id.* ¶¶ 48–52). The Court first considers the three Title VII discrimination counts and concludes Defendant is not entitled to summary judgment on those. It then turns to the remaining two counts and concludes Defendant is entitled to summary judgment.

### A. Title VII Discrimination Claims

Plaintiff brings three claims of discrimination under Title VII of the Civil Rights Act of 1964, which prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C § 2000e-2(a)(1) (alterations added). In Count I, Plaintiff alleges discrimination on the basis of sex (*see* Compl. ¶¶ 8–19); in Count II, she alleges discrimination on the basis of race (*see id.* ¶¶ 20–30); and in Count III, she alleges discrimination on the basis of color (*see id.* ¶¶ 31–42).

"[T]he ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juvenile Justice*, No. 21-13245, 2023 WL 8593114, at *1 (11th Cir. Dec. 12, 2023) (alteration added). In the absence of direct evidence, the relevant inquiry on summary judgment thus becomes whether there is "enough circumstantial evidence to raise a reasonable inference of intentional discrimination[.]" *Id.* at *5 (alteration added; citation and quotations marks omitted).

Plaintiff can survive summary judgment by satisfying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Plaintiff must establish a *prima facie* case of intentional discrimination by demonstrating "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly

situated' employees outside her class more favorably." *Lewis v. City of Union City ("Lewis I")*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citations omitted).[4] Meeting these three elements entitles Plaintiff to a rebuttable presumption of intentional discrimination, which Defendant can rebut by offering evidence of a valid, non-discriminatory justification for the adverse employment action. *See id.* at 1221. Plaintiff must then show Defendant's reason was pretextual and that the real reason for the employment action was discrimination. *See id.* (noting that this step "merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination" (alterations adopted; citation and quotation marks omitted)).

Defendant acknowledges Plaintiff is a member of a protected class and does not dispute her qualifications. (*See* Mot. 10; Reply 7). But it challenges every other part of Plaintiff's *prima facie* case: that (1) she was subject to an adverse employment action; (2) "similarly situated" employees were treated more favorably; and (3) Defendant's stated reasons for the differential treatment are pretextual. (*See* Mot. 9–14). Plaintiff, naturally, disagrees. (*See* Resp. 3–6). The Court addresses each issue in turn.

***Adverse employment action.*** Defendant first argues that being on relieved of duty status was not an adverse employment action. (*See* Mot. 10–13; Reply 7–8). As the Eleventh Circuit has explained, "adverse employment actions include . . . actions that affect continued employment or pay — things like terminations, demotions, suspensions without pay, and pay raises or cuts — as well as other things that are similarly significant standing alone." *Davis v. Legal Servs. Ala,*

---

[4] As the Eleventh Circuit has recently emphasized, the *McDonnell Douglas* framework is merely "an evidentiary tool that functions as a *procedural* device," and "*not* . . . an independent standard of liability[.]" *Tynes*, 2023 WL 8593114, at *4 (emphases in original; alteration added; citations and quotation marks omitted). The *prima facie* case outlined in *McDonnell Douglas* is not "a substitute standard necessary to survive summary judgment." *Id.* But it is "[o]ne way" for Plaintiff to survive summary judgment, *Lewis I*, 918 F.3d at 1220 (alteration added); and in this case, it is the way the parties have chosen to proceed (*see* Mot. 9–10; Resp. 3).

*Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (citation and quotation marks omitted). "Whether an employment action is adverse is . . . a question of fact, . . . subject to the traditional rules governing summary judgment." *Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 268 (11th Cir. 2009) (alterations added; citations omitted).[5]

Admittedly, the Eleventh Circuit has held that, especially in the context of an investigation, "a simple paid suspension is not an adverse employment action." *Davis*, 19 F.4th at 1267. But district courts have differed on whether the restrictions attached to a law enforcement officer's suspension might nonetheless constitute an adverse employment action. *Compare Litterdragt v. Miami-Dade Cnty.*, No. 14-cv-24737, 2016 WL 4269962, at *4 (S.D. Fla. Aug. 15, 2016) (rejecting a plaintiff's arguments "that she missed out on possible promotions, overtime pay, night-shift differential pay, and the use of her take-home car"), *with Diaz v. Miami Dade Cnty.*, No. 09-21856-Civ, 2010 WL 3927751, at *2, *8 (S.D. Fla. Aug. 17, 2010) (finding that reassignment to administrative duty during an investigation "[c]ould have been materially adverse to a reasonable employee[,]" in part because the employee suffered "a loss of opportunity for additional pay [and] a loss of a vehicle" (alterations added)).

In any event, atypical circumstances can "escalate[]" a "paid suspension to an adverse employment action." *Davis*, 19 F.4th at 1267 (alteration added). While Plaintiff concedes her ability to work overtime was restricted, she also testified that she was told three times she could not work overtime in exchange for compensatory leave while on relieved of duty status, even though she was aware of other similarly situated officers who did. (*See* Pl.'s Dep. 33:17–38:13).

---

[5] While juries are generally not called upon to directly answer whether a plaintiff has satisfied her burden under *McDonnell Douglas*, *see Tynes*, 2023 WL 8593114, at *5, the existence of an adverse employment action is part of Plaintiff's "ultimate question" in this case, even beyond the *McDonnell Douglas* framework, *see id.* at *1.

Further, she is still awaiting full resolution of her investigations, having not yet received her full backpay or a final determination on the second investigation. (*See* Resp. 6; Resp. SOF ¶¶ 17, 61).[6] Thus, even if a simple paid suspension during an investigation is not adverse, Plaintiff's assertions that she experienced an atypical suspension "are sufficient to at least create a genuine issue of material fact as to whether [her suspension] was a materially adverse employment action." *Diaz*, 2010 WL 3927751, at *7 (alteration added; citation and footnote call number omitted).

***More favorable treatment of "similarly situated" employees.*** Defendant's next argument is that Plaintiff cannot show "similarly situated" employees were treated more favorably than she was because she has not identified any "similarly situated" employees — or, "in court-speak, a 'comparator.'" *Lewis I*, 918 F.3d at 1217 (citation omitted). As an initial matter, the Court notes "it is possible that [Plaintiff's] comparators [are] insufficient to establish a *prima facie* case [under *McDonnell Douglas*] yet still relevant to the ultimate question of intentional discrimination[.]" *Tynes*, 2023 WL 8593114, at *6 (alterations added; citation omitted); *see also Lewis v. City of Union City ("Lewis II")*, 934 F.3d 1169, 1185 (11th Cir. 2019) (noting that "failure to produce a comparator does not necessarily doom the plaintiff's case" (citation and quotation marks omitted)). Putting this aside, the Court is not persuaded Plaintiff's proffered comparators are inadequate under *McDonnell Douglas*.

Defendant first argues Plaintiff's comparators are inadequate because none of them was "granted overtime by Major John Barrow while simultaneously under a PCB investigation related

---

[6] Defendant urges the Court to reject Plaintiff's "self-serving testimony . . . that she has not received all the retroactive pay and benefits owed to her." (Reply 3 (alteration added); *see also* Pl.'s Dep. 69:02–69:20 (stating Plaintiff was not paid full amount of backpay, as of August 21, 2023)). It offers an affidavit, dated after Plaintiff's testimony, showing Plaintiff has been paid. (*See generally* SOF, Ex. 8, Clodfelter Decl. [ECF No. 17-8]). But Plaintiff's sworn deposition testimony — the credibility of which the Court does not weigh in deciding a summary judgment motion — is sufficient to create a genuine dispute of material fact, precluding summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(B).

to allegations of perjury and misrepresentations." (Mot. 14). This exceeds what Plaintiff is required to show; a comparator need not be a clone. Instead, proffered comparators are to be "similarly situated in all material respects." *Lewis I*, 918 F.3d at 1218 (quotation marks omitted). While this is a fact-intensive inquiry, a valid comparator will generally have "engaged in the same basic conduct (or misconduct) as the plaintiff"; "been subject to the same employment policy, guideline, or rule as the plaintiff"; "been under the jurisdiction of the same supervisor as the plaintiff" (although not always); and "share[d] the plaintiff's employment or disciplinary history[.]" *Id.* at 1227–28 (alterations added; citations omitted).

Here, Plaintiff's comparators were all employees of Defendant charged with felonies. (*See* Resp. SOF, Ex. 4, Composite [ECF No. 22-4] 1, 3, 6; Pl.'s Dep. 19:15–19:19). In accordance with Defendant's policy, all awaited the resolution of their criminal cases and then the resolution of IAs. (*See generally id.*). All were initially suspended, then placed on relieved of duty status, subsequently reinstated, and eventually promoted. (*See generally id.*). All these factors are sufficient to make them valid comparators under *McDonnell Douglas*. *Cf. Lewis I*, 918 F.3d at 1230 (finding that a plaintiff and her comparators were not similarly situated where they "were placed on leave years apart and pursuant to altogether different personnel policies and, perhaps even more importantly, for altogether different [reasons]" (alteration added)).

Defendant next argues Plaintiff's comparators are not similarly situated because they did not have "second active IA investigation[s] open against them when they were returned to full duty." (Reply 9 (alteration added)). This is closer but ultimately unconvincing. The existence of a second IA could be relevant to whether Plaintiff should have been immediately reinstated after the conclusion of the first IA, as she argues. (*See* Resp. 4). But it is not a material difference for purposes of evaluating Plaintiff's other arguments that she was treated differently during both IAs

9

and that their resolution was delayed. (*See id.* 4–6). *Cf. Cruz v. Jinny Beauty Supply Co. Inc.*, No. 17-cv-23445, 2019 WL 5212463, at *7 (S.D. Fla. Sept. 22, 2019) (rejecting an employer's argument that comparators were inadequate because none "exhibited comparable performance issues" and noting that a "difference in pay and benefit structure" could be "a mechanism" for treating otherwise similar employees more favorably).

Indeed, Plaintiff presents evidence suggesting the comparators were treated more favorably than she was. (*See* Resp. SOF ¶¶ 68, 72, 76; Pl.'s Dep. 33:17–38:13). As discussed, Plaintiff was told three times she could not work for compensatory leave while on relieved of duty status, even though other male, non-Black officers were permitted to do this while relieved of duty. (*See* Pl.'s Dep. 36:20–36:24 (testifying to statement from a captain that a comparator was permitted to work overtime for compensatory leave "regardless of his status")).[7] Defendant may be able to provide explanations for this difference in treatment (*see id.* (differentiating comparator's situation due to his placement in a "proactive unit")), but whether these explanations are convincing is a question for the jury.

Plaintiff also highlights differences in the timing of her reinstatement relative to other similarly situated officers. (*See* Resp. 4–6). Plaintiff was acquitted of the federal charges underlying her first IA on April 9, 2019 (*see* SOF ¶ 24) but not issued the disciplinary action report

---

[7] Defendant urges the Court to discount these assertions, as Plaintiff's "self-serving subjective beliefs and characterizations that have no foundation." (Reply 3). But Defendant does not object to the admissibility of the evidence, and the Court declines to analyze the Federal Rules of Evidence on its behalf. (*See generally* Reply; Reply SOF). Further, even inadmissible evidence may be considered on a motion for summary judgment if no party objects. *See Rayford v. Walmart Stores, Inc.*, No. 15-0658-Civ, 2017 WL 2865035, at *7 (S.D. Ala. July 5, 2017) (citing *Munoz v. Int'l All.*, 563 F.2d 205, 214 (5th Cir. 1977)).

Defendant and Plaintiff seem to have differing interpretations of Defendant's overtime policy. (*Compare* Reply 3–4, *with* Pl.'s Dep. 33:17–33:22). But the relevant issue is not the exact nature of Defendant's policy; the issue is whether, regardless of the stated policy, Defendant allowed relieved of duty officers to work overtime for compensatory leave, as Plaintiff claims it did. (*See* Pl.'s Dep. 33:17–38:13).

concluding the subsequent administrative investigation until nine months later (*see id.* ¶¶ 42–43; Resp. SOF ¶¶ 42–43). In the meantime, Plaintiff's second IA began in earnest on December 6, 2021, with the State Attorney's Office's decision not to charge her with perjury. (*See* SOF ¶ 35; Resp. SOF ¶ 35 (disputing propriety of IA but not timing)). According to Defendant, Plaintiff's request for an extension tolled its deadline to complete the investigation; while the deadline was tolled, in July 2022, Defendant closed the investigation (*see* SOF, Ex. 2, Maresma Decl. [ECF No. 17-2] ¶¶ 21–22) and promoted Plaintiff (*see* SOF ¶ 61; Resp. SOF ¶ 61).

By contrast, one of Plaintiff's proffered comparators, Officer Richard Santiesteban, was suspended on March 10, 2021, when a criminal information was filed against him. (*See* Composite 1). "On or about November 19, 2021, the criminal court deferred Officer Santiesteban's prosecution and placed him in a pre-trial intervention program." (*Id.* 2). Less than two weeks later, on November 30, 2021, Defendant determined he was "entitled to reinstatement[.]" (*Id.* (alteration added)). Similarly, another comparator, Lieutenant Alexander Diaz de Villegas, became eligible for reinstatement just three days after his dismissal was rescinded. (*See id.* 4).

To be sure, Defendant offers explanations for why these officers were treated differently. (*See, e.g.*, Reply 8 (noting Officer Santiesteban's placement in a pre-trial intervention program)). It also notes that Plaintiff's third proffered comparator, Officer Alexander Gonzalez, was treated quite similarly to the way she was treated. (*See id.*). Officer Gonzalez was on relieved of duty status for eleven months after the resolution of his criminal case and during the pendency of a single IA. (*See* Composite 5–6). And although Lieutenant Diaz de Villegas was eligible for a relatively swift reinstatement, the entirety of his disciplinary process — from suspension to reinstatement — lasted over four years. (*See id.* 3–4). Again, none of the comparators "had a second active IA investigation open against them when they were returned to full duty." (Reply

11

9).

But the strength of and weight given to the comparator evidence is a question of fact for the jury to decide. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509–10 (1993) ("If . . . reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact does remain, which the trier of fact will be called upon to answer." (alteration added; emphases and footnote call number omitted)).[8] What matters at this stage is this: the differences between how Plaintiff and other officers were treated allow a jury to reasonably infer discrimination; whether they should draw that inference is a question for the parties to address at trial and not by summary judgment.

**Pretext.** Collectively, and finally, this evidence would also permit a jury to infer that Defendant's explanations for its treatment of Plaintiff are pretextual; "[a]n employer's deviation from its established policies may serve as evidence of pretext." *Hudson v. Blue Cross Blue Shield of Ala.*, 431 F. App'x 868, 869 (11th Cir. 2011) (alteration added; citation omitted); *see also Lewis II*, 934 F.3d at 1186. By Defendant's own admission, it is subject to a statutory six-month deadline for completing investigations, and, while those investigations are pending, employees under investigation are limited in their ability to work overtime. (*See* SOF ¶¶ 13, 49); Fla. Stat. § 112.432. Defendant maintains it complied with these deadlines and protocols. (*See* SOF ¶¶ 40–41).

But even recognizing the tolling of deadlines and similar delays for Lieutenant Diaz de Villegas and Officer Gonzalez, the fact is that Plaintiff experienced a four-year delay for two investigations. (*See id.* ¶¶ 21 (date of suspension), 61 (date of promotion); Resp. SOF ¶¶ 21, 61

---

[8] Again, while jurors need not determine whether a comparator is adequate under *McDonnell Douglas*, "the strength of [] comparator evidence is relevant to the ultimate question of intentional discrimination." *Tynes*, 2023 WL 8593114, at *6 (alteration added; citation omitted). When such evidence is presented, "it is the jury's role . . . to determine how much weight [it] should be given." *Id.* (alterations added).

12

(clarifying effective date)). Further, Plaintiff presents evidence suggesting the nature of the limitations on her employment during those investigations was different for her than for others not in her protected class. (*See* Resp. 4–6; Pl.'s Dep. 33:17–38:13). On these facts, a jury could infer that Defendant's justifications for how it treated Plaintiff are pretextual.

Admittedly, Defendant offers plausible, innocent explanations for these delays and discrepancies as well, emphasizing the specifics of Plaintiff's case, the overlapping nature of the two investigations, and her eventual promotion. (*See generally* Reply). Those explanations may or may not persuade a jury; but Defendant well knows the Court "must draw all reasonable inferences in favor of [Plaintiff] and may not weigh evidence or make credibility determinations, which are jury functions, not those of a judge." *Lewis II*, 934 F.3d at 1179 (alteration added; citation and quotation marks omitted). True, "the evidence [presented] might . . . yield[] any of a number of conclusions." *Id.* at 1190 (alterations added). But "the ultimate decision in this case is for a properly instructed jury that has seen the witnesses and heard all of the evidence." *Id.* at 1191.[9]

Consequently, the Court declines to grant summary judgment for Defendant on Plaintiff's Title VII discrimination claims.

### B. Retaliation and ADA Claims

Having concluded Defendant is not entitled to summary judgment on Plaintiff's discrimination claims, the Court turns to whether summary judgment is appropriate on Plaintiff's retaliation and ADA claims. On these claims, the Court agrees with Defendant.

---

[9] The Court would reach the same outcome under the "convincing mosaic" standard, which allows plaintiffs to show "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis II*, 934 F.3d at 1185 (citation and quotation marks omitted) (reversing summary judgment for the defendant because the plaintiff, even though she did not establish a *prima facie* case under *McDonnell Douglas*, nonetheless presented a "convincing mosaic").

In Count IV of the Complaint, Plaintiff alleges retaliation by Defendant (*see* Compl. ¶¶ 43–47), a claim Defendant argues must fail (*see* Mot. 14–15). Curiously, in her Response to Defendant's Motion, Plaintiff rejects Defendant's argument on the basis that "Plaintiff has not asserted that these adverse acts were [retaliatory] in nature." (Resp. 6 (alteration added)). Instead, she argues "[her claims] are straight[]forward disparate treatment discrimination claims." (*Id.* (alteration added)). In other words, Plaintiff abandons Count IV. *See Brown v. Buddy Bee Corp.*, No. 14-24368-Civ, 2015 WL 11233388, at *4 (S.D. Fla. Mar. 11, 2015) (treating "failure to address . . . nonfrivolous legal argument [as] tantamount to failure to respond to the [m]otion" and granting motion by default (alterations added; citation omitted)); *O'Kelley v. Warden, GDCP*, No. 415-cv-104, 2019 WL 1452514, at *5 (S.D. Ga. Apr. 2, 2019) (declining to reach arguments related to "expressly abandoned" claims).

Similarly, in Count V of the Complaint, Plaintiff alleges Defendant violated the ADA by denying her requests to work from home due to her son's asthma. (*See* Compl. ¶¶ 48–52). Defendant attacks this claim on several fronts (*see* Mot. 16–18), and Plaintiff does not respond at all (*see generally* Resp.). "Where . . . [a] non-movant fails to address a particular claim asserted in the summary judgment motion[] but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional, and therefore consider the claim abandoned." *Reid v. Hasty*, No. 07-cv-2475, 2009 WL 10711917, at *9 n.12 (N.D. Ga. Nov. 5, 2009) (alterations added; citations omitted).[10] Summary judgment is thus granted on both abandoned claims.

---

[10] The Court would reach the same conclusion on the merits. "[T]he associational provision of the ADA does not require employers to make any reasonable accommodation for the disabilities of relatives or associates of a nondisabled employee." *Rocky v. Columbia Lawnwood Reg'l Med. Ctr.*, 54 F. Supp. 2d 1159, 1165 (S.D. Fla. 1999) (alteration added; citation and quotation marks omitted).

14

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Miami-Dade County, Florida's Corrected Motion for Summary Judgment **[ECF No. 19]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of January, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record